Argument in 23-76-74 James Swanson vs. Danimer Scientific, Inc. at ALP. We have Mr. Green. I understand you would like to reserve two minutes for rebuttal, is that right? Yes, Your Honor. Thank you. May I please the court? Kevin Green for the appellant. And if I'm not too presumptuous, taking as a given that there's jurisdiction to hear this appeal. Never take anything as a given. I'd like to start with where the district court got stuck here. And in security fraud cases, the pleading is very difficult, and you need to allege up to six elements or requirements. And scienter is often the most difficult of those. And so the court will often go to, I'm just going straight to scienter, I'm not going to address anything else. But the district court here got stuck on what I think is a core difference at the heart of this appeal and why falsity and scienter are both alleged. And this court respectfully should reverse. Imagine on the lectern here you have raw Nodax. It looks something like powdered lemonade. On the other side, you have a Starbucks container of some kind with a straw. Those two things, in terms of capacity to biodegrade, are so different that the district court ruled that, well, as to eight statements, they are materially misleading. And why is that so important, that difference? Because in terms of marketing to investors and the public, raw Nodax doesn't cause a whole lot of excitement. We've got these detailed scientific reports in the record. Well, I think we understand the idea of materiality. If you could just point out, why is it, for example, the judge was wrong in concluding that you had not adequately alleged that Mr. Crossgreen knew that problem, that the Starbucks container in a landfill is not going to biodegrade as fast? Because I thought you were relying mostly on the CTO's statements, but there was no allegation that the CTO had ever said that to Mr. Crossgreen, much less had said it to him at the time Crossgreen had made those statements. What's the proof? What was the allegation that at the time Mr. Crossgreen made the statements, and assuming they should be characterized as you did, that he knew they were wrong? Well, a couple of- To narrow it down, because I think he was, what's the allegation that he had spoken with Mr. Van Trump, who had said that's not so? That is not specifically alleged, but I'm also not aware of a requirement that it needs to be alleged. And you could have a case where the statements challenged are a good deal for the time that the truth emerges in these cases. But just to take one example, I think the strongest statement is just four days before the Wall Street Journal article. And so the CTO is saying that the CEO's comments are not entirely or wholly accurate, just four days after the last press release that is challenged, referring to biodegradability. So- No, I get- Which statement, I'm sorry? That's a paragraph 177 of the complaint. And that's regarding, and the district court got stuck on a point that I think is very fair. That is, when you're talking about particular products landing in particular places, that's too much. That's too far, because the certifications even the defendants put in for NODACs don't certify that. And the TUV, for example, said we don't certify end products. That's a very different thing. So, Judge Romdini, I'm glad you asked about the admission, because reviewing our briefs, yes, we went heavy on that. But this inquiry is holistic, and that is one piece of it. Now, why is that so important? It's not just the closeness in time, but the admission, as we call it, just taking that as a term, goes to seven of the eight statements, because the CEO was talking about biodegrading in landfills. And four days later, the CTO, technical officer, who maybe knows something about this, they've worked together for five years, that's in our brief, says, well, that's not wholly accurate. And when he says that, seven of the eight challenge statements, and this is why I enjoy oral argument as a matter of nuance and emphasis, seven of the eight deal with at least one interpretation, biodegrading in landfills. And that's what the CEO was talking about. It's only the second statement that refers to biodegrading in ocean conditions. Anne, I want to touch on- I'm sorry, I'm a step behind, and I apologize. But the statement in paragraph 177 talks about breaking down in industrial composting facilities and back air compost units, which are subject to a very different set of considerations than a landfill. I mean, the CTO talked about landfills are sealed, so they don't have access to the sort of processing that leads to biodegradation. But I don't see that paragraph 177 says anything about landfills. Well, I think he's making a broader suggestion about the accuracy of what the CEO is saying. And, again, this is an unusual thing to say to the press. But it's pretty specific to landfills, right? Because there's something unique about landfills, distinct from some of these other environments, that the CEO's comment wouldn't apply in the context of landfills. Are you suggesting that the CTO has also challenged the notion that it breaks down in industrial composting facilities and back yard compost units? To answer your question one word, no. I want to be direct about that. But I think we're talking about reasonable inferences in terms of what the CEO knew in the broader context and keeping in mind, again, that CANTOR is holistic. So another point I want to hit as a matter of emphasis, and I want to give a record site that is not in the briefs, and I want to be fair to my opponent in doing this, the investor presentation where the language referring to biodegrading within 12 to 18 weeks was later deleted. That is at 4 Joint Appendix Volume 769. And that refers to biodegrading within 12 to 18 weeks. And why is this so important? Because, again, it's not going to catch on with the market or investors unless you're talking about something that people can identify with, like, say, discarding a Starbucks cup that will take 400 years to biodegrade. So editing something, I mean, just like an opinion or a brief is an intentional act. So there's an inference of CANTOR to take from that. And, again, none of these is dispositive. It's all of them combined together. And I think the logical conclusion from what the district court said about materiality and the statements being misleading is that no single fact is dispositive. But this is so far off from the two products that I described, and especially when you look at those TUV reports. This is pretty striking. Those are technical. I'm not sure they're fodder for a motion to dismiss. But, I mean, those don't remotely support the notion that end products biodegrade within 12 to 18 weeks or 12 to 18 months. So with that, I'll reserve the rest of my time. Very good. You've reserved two minutes. Thank you. Why don't we hear from counsel for the appellee, Mr. Lutz. Yes, thank you. May it please the court. Brian Lutz from Gibson-Dunn on behalf of the defendants. I'm going to come to CANTOR in one second, but I want to pick up where you left off by actually focusing on the language of the particular alleged misstatements themselves. You will note, as Your Honor did, that the statements themselves say nothing about landfills, biodegradability in landfills. Plaintiffs' brief, both of their briefs, are strikingly silent on the actual language of the alleged misstatements themselves. It is the basic building blocks of pleading falsity that you have to identify the specific alleged misstatement and plead specific facts demonstrating why that statement was not true or was misleading at the time it was made. They don't even try to do that, I would submit, because there are no specific allegations in the complaint demonstrating why these eight statements that we've cited on pages nine and ten of our appellate brief, why those statements actually weren't true. Where, for example, with respect to statements one and six, are the allegations demonstrating that NODACs cannot replace 80% of the plastics that are never recycled or incinerated? Those allegations, those facts, do not exist. Can I just suggest, Judge Gonzales, as I recall, ruled for you on Sienta, right? Correct. And that your arguments about materiality are attempting to, I guess, relying on an alternative base for affirmance that goes against what Judge Gonzales found. Might you perhaps focus on Sienta? Absolutely. Where the judge ruled in your favor. Very well, thank you. I was starting there because it really bleeds into the Sienta argument. To plead Sienta, the plaintiffs have to identify specific facts giving rise to a strong inference of Sienta. They have to point to facts demonstrating that the individual defendants knew or had access to information that contradicted what they were saying, that showed what they were saying was not true. We focus on one statement in particular, and your Honor asked the question about that. Those facts, with respect to each of these eight challenge statements, do not exist in the complaint. And the plaintiffs don't even really try to identify those statements. They point in their core argument in their appellate briefs on pages 21, 22, 25 of their opening brief, page 14 of their reply brief. Their core theory is that the defendants, the individual defendants, must have known, must have had access to information that contradicted their statements. At each point in this argument that they make, they don't cite anything in the complaint. Again, it's because those facts are not alleged. There are no facts identifying, for example, information demonstrating that the announcements with packaging companies of plans to develop products in the future, that those weren't true, that those plans didn't exist, that those partnerships didn't exist. There are no facts, or that any defendant, for scienter purposes, that any individual defendant knew that those partnerships didn't exist. Taking the other statements, there's two statements that NODACs will replace 80% or can replace 80% of the plastics that are not recycled or incinerated. There are no facts alleged in the complaint. The plaintiffs certainly point to none demonstrating that Mr. Crosbury, for example, or any other individual defendant knew or had access to information demonstrating that that was not true. I understand we have to parse these individual statements, but wasn't the broader theory here that these statements about eliminating the need for recycling implied that they were 100% biodegradable, which might be true for the polymer in powder form in a box, but when you actually make something from it, it's going to have other components that cause it not to be 100% biodegradable. So to the extent you're making these broad claims about you can throw things in the ocean, everything will be fine, that's just not supported by the basic science of this, which they must have known. I mean, isn't that kind of the theory? I think you've articulated the theory in a way that doesn't exactly exist in the briefs, but even if that were the theory, there are no particularized factual allegations in the complaint, as Your Honor's question at the outset contemplated. There are no particularized factual allegations in the complaint demonstrating that any individual defendant believed that any statement that they made, even under that overarching theory that's challenged in the case, these eight statements, wasn't true at the time that they made it, in light of that or otherwise. There are no facts alleged. How do you reconcile the statements that the CFO made, that the chief financial officer, that the CTO made, with those of the chief technical officer? Sure. There's a Wall Street Journal article that comes out. Wall Street Journal article says, Nodex is biodegradable, but there's questions out there about how quickly it will biodegrade in different conditions. They cite a conversation that they had with the CTO. The CTO says it is absolutely 100% biodegradable, depends on the conditions. If it's in a sealed landfill, it may not biodegrade, because those are designed to not have biodegration, to not give bacteria in there. What he's saying in clarifying that, he's pointing, the Wall Street Journal article says, Well, Mr. Kroski said in an earnings call that in landfills it will biodegrade. And he says, well, just technically, some landfills it's different. That is a statement that is not even alleged to be false or misleading in the complaint. That statement that is referenced by Mr. Kroski, not alleged to be false or misleading in the complaint, is certainly not among the statements that are at issue on this appeal. So it's a different issue. You asked the question when you were pointing to that statement number eight. Well, I don't see landfill in there. They're talking about industrial composting and the like. The same is true of every single statement of the eight. None of them have anything to do specifically with the issue that you raised, Your Honor, which is the sealed landfills. There's a couple of other arguments that my colleagues make on Scientra. They cite what they call the core operations doctrine. They acknowledge that the core operations doctrine requires that contradictory facts of critical importance that are either provided to or should have been, that individual defendants should have been aware of, that is still a requirement of the so-called core operations doctrine. So there's a question whether it even applies in this circuit. Insofar as you even consider that, as the district court did, there's no question that the plaintiffs still have not satisfied the core operations doctrine because, again, they have identified no facts that are contrary, that are contradictory to the statements that are at issue on appeal that either were provided to or known by any of the individual defendants. So the core operations theory also is no help to them. The way to put it is the core operations, I hesitate to call it doctrine, but that's what some cases have called it. They're not a theory of omniscience, that if something relates to core operations, then by definition the corporate directors must know all facts about it, even if there's no proof that anyone in the world knew those facts about it, right? That's exactly right. That's exactly right.  Look, I'm happy to talk about other issues on scienter from motive and opportunity. The plaintiffs basically have a position of, look, this is a DSPAC transaction. There's nothing unique about DSPAC for purposes of pleadings of scienter. The case law is clear in the Second Circuit and other places that a motive to raise money or to go public is not to do a transaction, is not itself sufficient to plead motive and opportunity because it's a generalized motive that is not unique to an individual person who can have a concrete personal benefit. It's a general motive. Unless your honors have any questions, I'm happy to sit down. Thank you. Thank you. Very good. Thank you. Mr. Green, you've reserved two minutes. Thank you, Your Honor. Well, according to my friend on the other side, the district court stuck its neck out and really missed it on an issue that it did not have to address. And just given the brevity of time, I invite the court's attention to our reply brief starting at page five, where we talk about the basis for falsity. And I also want to just talk about the standard for pleading falsity, which is really kind of a misnomer because district court ruled that the statements were materially misleading. And that doesn't mean, unlike what my colleague said, that the statements were not true or they could be literally true. The problem is that they made the wrong impression, they left the wrong impression, that something that biodegrades in a lab at 85 degrees, say centigrade or Fahrenheit, is going to biodegrade the same way in the ocean, which it will not do for a host of reasons. And there's plenty alleged here that not only was that not true, but the defendants knew it. And just to clarify another point, my colleague alluded to opinions of the corporate officials, and that would be under a case called Omnicare, the U.S. Supreme Court. And this case does not involve opinions in that sense of the word. Co-operations inference, Judge Nardini, you took the words from me, and that is that I hate calling it a doctrine because it sounds like something that somebody made up, judges or lawyers. And it simply means that it's a matter of a reasonable inference to an extent of degree that you can infer that the corporate officials knew. So when the CTO says something that doesn't match up with what the company is telling the public, that we can infer something from that. And last, everything biodegrades at some point. That's the point of the Wall Street Journal article. But the difference here is stark, and that is you've got representations that are really important to the company's success, saying that this is going to biodegrade. You can throw a straw away and not worry about it. I wish we could feel that way. But without any of those features, it takes something like 400 years for plastic to biodegrade. Thank you very much. Thank you both. We appreciate your arguments, and we will take the case under advisement. Thank you. Have a good day.